UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Teddy Nazario Torres, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Empresas Semyllas, Inc., Does 1-10, inclusive. | )   **CIVIL ACTION** |
| Defendant(s) | ) |
| | ) |
| | ) |

Plaintiff, Teddy Nazario Torres, through counsel, hereby complains and alleges as follows:

## NATURE OF THE ACTION

1. This is an action seeking to remedy unlawful discrimination by the Defendants against the Plaintiff in the Defendants' place of public accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA") and Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141.

2. This lawsuit is necessary because Defendants failed to answer Plaintiff's demands to remove accessibility barriers without an economic demand, and because the Defendants continue to maintain barriers in violation of the ADA as described herein.

## PARTIES

3. Plaintiff, Teddy Nazario Torres, is person with mobility-related limitations. For example, because of a condition related to his legs, his ability to walk, stand, and bend is limited. Plaintiff is registered as an individual with disabilities at the Department of Health of Puerto Rico (No. P-17001). The number is his permanent handicapped parking permit issued by the Commonwealth of Puerto

Rico is: 2242376. Plaintiff is therefore a "disabled" person within the meaning of the ADA.

4.  The business establishment at issue in this complaint discriminated against Plaintiff and prevented Plaintiff from enjoying full and equal access thereto due to the existence of unlawful architectural barriers that violate the ADA as described in more detail herein.

5.  Defendant, Empresas Semyllas, Inc. d/b/a Econo San Germán, owns, operates, or leases real property located at PR #2 Ángel Casto Pérez Avenue, San Germán, 00683, Puerto Rico (GPS Coordinates: 18.089530, 67.030678) (the "Subject Property").

6.  The Subject Property is a facility open to the general public, a public accommodation, and a business establishment insofar as it provides goods and/or services to the general public.

7.  Defendant Does 1 through 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to the Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by those Defendants.

**JURISDICTION AND VENUE**

8.  This Court has jurisdiction over the subject matter of this action pursuant 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4) for violations of the ADA.

9.  This Court has supplemental jurisdiction over the state law claims alleged herein under Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141 because the state law claim is an attendant and related cause of action that arises

from the same nucleus of operative facts and arising out of the same transaction or occurrence as the federal law claims set forth herein.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) based on the fact that the real property that is the subject of this action is located in this district and the Plaintiff's causes of action arose in this district.

## STATEMENT OF FACTS

11.     The ADA establishes different standards depending on when the facility was constructed and whether the facility has been altered since January 26, 1992.  28 C.F.R. §§ 36.401, 36.402.   Existing facilities are required to remove barriers to access for persons with disabilities where removal is "readily achievable."  42 U.S.C. § 12182(b)(2) (A)(iv); 28 C.F.R. § 36.304.    Facilities designed and constructed for first occupancy after January 26, 1993, must be accessible to persons with disabilities unless the entity can demonstrate that it is "structurally impractical."  42 U.S.C. § 12183(a). Finally, alterations after January 26, 1992 must be made to ensure that, to the "maximum extent feasible," the altered portions of the facility are accessible.  28 C.F.R. § 36.402(a)(1).

12.     The original ADA design Standards were first published in 1991 and are set forth at 28 C.F.R. Part 36, Appendix A (the "1991 Standards").  The new ADA design Standards were first published in 2010 and are set forth at 28 C.F.R. Part 36, Subpart D (the "2010 Standards").    Both Standards are available at www.ada.gov. New construction and alterations commenced between September 15, 2010, and March 15, 2012, must comply with either the 1991 Standards or the 2010 Standards. All new construction and alterations commenced on or after March 15, 2012 must comply with the 2010 Standards.

13.     Plaintiff alleges on information and belief, the Subject Property was designed and constructed for first occupancy after January 26, 1993.  *See* 28 C.F.R. § 36.401.

14.     Plaintiff alleges on information and belief, the Subject Property is located in a facility that was constructed after January 26, 1993. S*ee* 28 C.F.R. § 36.401.

15.     On information and belief, the Subject Property undergone alterations after January 26, 1992. The term "alterations" includes, but is not limited to, remodeling, renovation, rehabilitation, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full height partitions.  Normal maintenance, re-roofing, painting or wallpapering, asbestos removal, or changes to mechanical or electrical systems are not alterations unless they affect the usability of the building or facility.  *See* 28 C.F.R. § 36.402(b).

16.     Alternatively, the Subject Property is an existing facility required to remove barriers to access for persons with disabilities where removal is "readily achievable."  42 U.S.C. § 12182(b)(2). The ADA provides that, when assessing whether barrier removal is "readily achievable," the factors to consider include the "resources" of the facility, 42 U.S.C. § 12181(9)(b), which includes "the overall financial resources of any parent corporation or entity," 28 C.F.R. § 36.104.

17.     Service counters, seating areas and restrooms are among the facilities, privileges and advantages offered by the Defendants to patrons of the Subject Property.

18.     The Subject Property is not fully accessible to Plaintiff or similarly situated persons with mobility disabilities to the barriers at the Subject Property.

19.     On information and belief, on September 2, 2017, and continuously from that time to the present, and currently, the Subject Property was not in compliance with the ADA:

Check-Out Aisles

    i.   There are two purportedly accessible check-out aisles with a sign with the International Symbol of Accessibility pursuant to Section [216.11 of the ADAAG. One of the purportedly accessible check-out aisles is not staffed and is regularly closed. The other purportedly accessible check-out aisle is an express aisle limited to customers purchasing fewer than 10 items. Plaintiff be provided a level of convenience equivalent to that provided

for other customers. The store must either keep an adequate number of accessible aisles open or otherwise modify its policies or practices. For example, because only one aisle is accessible and it is an express aisle limited to customers purchasing fewer than 10 items, the defendants must permit a customer with mobility disabilities, like Plaintiff, to make his purchase at the express lane, regardless of the number of items.

ii.  On March 15, 2018 and April 8, 2018, Plaintiff was not allowed to use the only purportedly accessible aisle because Plaintiff was not using a "wheelchair".   Not looking stereotypically wheelchair-bounded, defendants suggested that Plaintiff perfectly well and not entitled to use the purportedly accessible aisle. Defendants' policies, practices, procedures, and mindset is something that will continue to keep the disabled, and Plaintiff, at the periphery of society, because they restrict their understanding of disability to a picture in their heads that says all disabled people look the same. Defendants' policies, practices and procedures unlawfully limit what they believe a disabled person looks like. Not all disabled individuals look the same or are wheelchair-bounded – just as able-bodied people do not. Plaintiff demanded to use the purportedly accessible check-out aisle at the time, and he was denied access to the purportedly accessible check-out aisle. Plaintiff also demanded a change in their practices – without an economic demand for defendants' illegal conduct – and he was not allowed to use the purportedly accessible check-out aisle. If it is not readily achievable to provide any accessible check-out aisles, defendants must provide readily achievable alternative methods for Plaintiff to pay for merchandise, such as assistance at the check-out counter or curbside service.

**Counters**

iii.  All portions of the counters –service counter, meat department counter, decorated cakes department counter– are higher than 36 inches above the floor. In violation of section 904.4.1 of the ADAAG. Possible readily achievable solution: lowering a section of the counter.  No portions of the counters –service counter, meat department counter, decorated cakes department counter– is at least 36 inches long.  Possible readily achievable solution: lengthening a section of the counter.

Restroom

iv.  Restroom – signage (2010 ADA Standards for Accessible Design – 216.8): Toilet rooms are available to the public. Not all toilets rooms are accessible and there are no signs at inaccessible toilet rooms that give directions to accessible toilet rooms. Alternatively, the clearance provided around the water closet does not measure at least 60 inches from the side wall and at least 56 inches from the rear wall in violation of 606.5, 604.8.1.1. Please alter the room for clearance. Maintenance and procedures to keep unobstructed clearance space is not structural in nature, it is a maintenance issue. It is well established that voluntary cessation of allegedly illegal conduct in the face of litigation does not deprive the court of the power to hear the case and issue injunctive relief. United States v. W.T. Grant, Co., 345 U.S. 629 (1953); see also County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (a dispute is not moot unless there is no expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged. No interim events have irrevocably eradicated the effects of the violation, because defendant is free, at his discretion and at any time, to fail to provide adequate maintenance and cause obstructions.

Parking

v.  Purportedly accessible parking spaces are provided. There is no space that is at least 96 inches wide minimum with an adjacent 96-inch wide minimum demarcated access aisle OR 132 inches wide minimum with an adjacent 60-inch wide minimum demarcated access aisle.  See 1991 Standards §§ 4.1.2(5), 4.6.3; 2010 Standards §§ 208.2.4, 502.2, 502.3.

20.    The Plaintiff personally encountered architectural barriers that constitute ADA violations at the Subject Property on March 15, 2018 and on April 8, 2018 and was denied full and equal access because of the violations.

21.    From April 8, 2018 to the present, the Plaintiff has been deterred from visiting the Subject Property because of his knowledge of the existence of barriers that violate the ADA.

22.    The existence of access barriers and ADA violations at the Subject Property caused the Plaintiff unnecessary difficulty and discomfort.

23.    Plaintiff will return to Subject Property after obtaining injunctive relief for monitoring the alterations at the property and enforcing any order entered by Court. See, Civil Rights Education and Enforcement Center v. Hospitality Properties Trust, No. 16-16269 (9th Cir Aug. 7 2017) (there is constitutional standing where a plaintiff's only motivation for visiting a facility is to test for ADA compliance).

24.    Plaintiff intents to visit the Subject Property and the business establishment threat and intends to do so but will be deterred from doing so until the violations are cured.

25.    On information and belief, the violations identified above are readily achievable. The Department of Justice describes these kinds of barriers as presumptively readily achievable to remove and Plaintiff contends that the removal of them is easily accomplishable without much difficulty or expense. Likewise, even if strictly compliant barrier removal were not achievable, there are many kinds of alternative accommodations that could be made to provide a greater degree of

accessibility to the Plaintiff and similarly situated persons with mobility disabilities.

26.     On information and belief, Plaintiff alleges that the failure to remove barriers has been knowing, willful and intentional because:

    i.   The barriers described herein are clearly visible and tend to be obvious even to a casual observer;

    ii.   Plaintiff provided verbal notice and an opportunity to cure and the Defendants responded by ignoring the violations and refusing to promptly remove barriers or create alternative accommodations;

    iii.   The Defendants operate the Subject Property and have control over conditions thereat. They have, and have had, the means and ability to make the necessary remediation of access barriers if they had ever so intended.

    iv.   Today, businesses have an obligation to become accessible, and there is a consequence if they do not: they could be sued. Defendant failed to be proactive and to provide access on its own. Defendant took a "wait and see" attitude. Nearly 28 years since the ADA was enacted, Defendant was expected to comply with its legal obligations.

    v.   Defendant ignores the daily experience of thousands of people with disabilities who cannot shop, transact personal business, visit the doctor, or enjoy recreation like most people take for granted, because so many public accommodations across the country, like defendants, have ignored the reasonable requirements of the ADA. The ADA is the difference between participation and exclusion on a daily basis.

    vi.   Plaintiff was not required to provide a written notice of the accessibility issues. No other civil rights law permits businesses to discriminate without consequence unless and until the victims of discrimination notify the business that it has violated the law. The ADA does not place the

heaviest burden for ending discrimination on the very people the law is there to protect.

vii. The ADA is already very carefully crafted to take the needs of business owners into account. Compliance is simply not burdensome. The careful compromise originally designed by a bipartisan Congress in 1990, provides that existing businesses are only required to provide access when doing so is readily achievable. Establishing and running a business necessitates compliance with many laws and rules—that is the cost of doing business. It is unthinkable that we would delay or eliminate consequences for small businesses that failed to pay taxes or meet health and safety codes. Violating the rights of people with disabilities should be treated no differently

viii. There are extensive federal efforts to educate business owners about their ADA obligations, including the in-depth DOJ ADA website (**ada.gov**), the DOJ ADA hotline, extensive DOJ technical assistance materials, and the ten federally-funded regional ADA Centers that provide in-depth resources and training in every state (**adata.org**). Yet defendant have made no meaningful, proactive effort to comply with the ADA.

ix. Defendants failed to acknowledge that the ADA accessibility standards are extremely important. They are not minor details or picky rules, but rather, are essential to ensure true accessibility. A doorway that is too narrow can be the difference between accessing a business or not. A too-short bathroom grab bar can be the difference between using a restroom or being forced to go without a restroom. That said, it is important to point out that to impose liability under the ADA, the barrier does not need to completely preclude plaintiff from entering or using the facility; it need only *interfere* with the plaintiff's full and equal enjoyment of the facility. See Lobato v. Gomez, Civil No. 15-0686 (E.D. Cal. Oct. 31, 2016); Moeller

v. Taco Bell Corp., 816 F.Supp.2d 831, 848 (N.D.Cal.2011) (citing Doran v. 7-Eleven Inc., 524 F.3d 1034, 1041 n. 4 (9th Cir. 2008) (discussing that the ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access.")). "Because the ADAAG establishes the technical standards required for `full and equal enjoyment,' if a barrier violating the ADAAG relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes `discrimination' under the ADA, thereby violating the ADA." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 947 (9th Cir.2011).

27.     Access barriers at the Subject Property are being consciously ignored by the Defendants; the Defendants have knowingly disregarded the ongoing duty to remove them in compliance with the ADA.

28.     Plaintiff alleges on information and belief that there are other ADA violations and unlawful architectural barriers at the Subject Property that relate to his mobility disability.

29.     Plaintiff hereby seeks to remediate and remove all barriers related to his disability, whether presently known or unknown. As the court held in Doran v. 7-11. Inc., 506 F.3d 1191 (9th Cir. 2008):

> "[W]here a disabled person has Article III standing to bring a claim for injunctive relief under the ADA because of at least one alleged statutory violation of which he or she has knowledge and which deters access to, or full use and enjoyment of, a place of public accommodation, he or she may conduct discovery to determine what, if any, other barriers affecting his or her disability existed at the time he or she brought the claim. This list of barriers would then in total constitute the factual underpinnings of a single legal injury, namely, the failure to remove architectural barriers in violation of the ADA, which failure actually harmed the disabled person by deterring that disabled person from visiting a facility that otherwise would have been visited at a definite future time, yielding Article III standing."

30.     The violations and references to code sections herein are not all-inclusive. Plaintiff will amend this complaint to provide a complete description of the full

scope of ADA violations after conducting a comprehensive expert site inspection. For the purposes of this Complaint, Plaintiff asserts that the barriers alleged herein violate one or more of the ADA's implementing regulations.

**FIRST CAUSE OF ACTION**
**Discrimination Based on Disability**
**[42 U.S.C. § 12101, et seq]**
**By Plaintiff against all Defendants**

31.      Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in all prior paragraphs of this complaint.

32.      The ADA obligates owners, operators, lessees and lessors of public accommodations to ensure that the privileges, advantages, accommodations, facilities, goods and services are offered fully and equally to persons with disabilities, including the Plaintiff and others similarly situated [42 U.S.C. § 12182(a)].

33.      Discrimination is defined in the ADA, inter alia, as follows:

A.  A failure to remove architectural barriers where such removal is readily achievable [42 U.S.C. § 12182(b)(2)(A)(iv)]. Barriers are identified and described in the Americans with Disabilities Act Accessibility Guidelines (the "ADAAG") [28 C.F.R. Part 36, Appendix "D"];

B.   A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities [42 U.S.C. § 12183(a)(2)];

C.  Where an entity can demonstrate that the removal of a barrier is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable [42 U.S.C. § 12182(b)(2)(A)(v)].

34.     The ADA, the ADAAG's 1991 Standards (the "1991 Standards") and 2010 Standards (the "2010 Standards") contain minimum standards that constitute legal requirements regarding accessibility at places of public accommodation.

35.     The Defendants have failed to comply with minimum ADA standards and have discriminated against the Plaintiff on the basis of his mobility disability. Each of the barriers and accessibility violations set forth above is readily achievable to remove, is the result of an alteration that was completed without meeting minimum ADA standards, or could be easily remediated by implementation of one or more available alternative accommodations. Accordingly, the Defendants have violated the ADA.

## Failure to Design and Construct an Accessible Facility

36.     Plaintiff alleges on information and belief that the Subject Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

37.     The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

38.     Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.

## Failure to Make an Altered Facility Accessible

39.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

40.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with

disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id. Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

41.     The Defendants are obligated to maintain in operable working condition those features of the Subject Property's facilities and equipment that are required to be readily accessible to and usable by Plaintiff and similarly situated persons with disabilities [28 C.F.R. § 36.211(a)]. The Defendants failure to ensure that accessible facilities at the Subject Property were available and ready to be used by the Plaintiff violates the ADA.

42.     The Defendants have a duty to remove architectural barriers where readily achievable, to make alterations that are consistent with minimum ADA standards and to provide alternative accommodations where necessary to provide access. The Defendants benign neglect of these duties, together with their general apathy and indifference, violations the ADA.

43.     The Defendants wrongful conduct is continuing in that Defendants continue to deny full, fair and equal access to their business establishment and full, fair and equal accommodations, advantages, facilities, privileges and services to Plaintiff as a disabled person due to Plaintiff's disability. The foregoing conduct constitutes unlawful discrimination against the Plaintiff and other mobility disabled persons who, like the Plaintiff, will benefit from an order that the Defendants remove barriers and improve access by complying with minimum ADA standards.

**SECOND CAUSE OF ACTION**
**Violations of the Puerto Civil Code, Article 1802**
**[P.R. Laws Ann. tit. 31, § 5141]**
**By Plaintiff against all Defendants**

44.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in all prior paragraphs of this complaint.

45.     The foregoing violations of the ADA constitute per se violations and intentional unlawful discrimination prohibited by Article 1802 of the Puerto Rico Civil Code [P.R. Laws Ann. tit. 31, § 5141].

46.     Plaintiff is entitled to actual damages because he was denied full and equal access to the Subject Property, because he personally encountered access barriers at the Subject Property that discriminated against him on the basis of his mobility disability, because he was deterred from accessing the Subject Property, and because the violations caused him difficulty, discomfort or loss of enjoyment of life.

47.     Plaintiff was denied full and equal access to the Subject Property because he personally encountered ADA violations on a particular occasion.

48.     Plaintiff is currently deterred from accessing the Subject Property on occasions due to his actual knowledge of ADA violations that cause unnecessarily difficulties. His actual knowledge reasonably dissuaded him from accessing the Subject Property, which he intended to use on particular occasions and because the violations would have actually denied Plaintiff full and equal access if he had accessed the Subject Property on those particular occasions.

49.     Due to the intentional unlawful discrimination set forth above, Plaintiff has been denied the right and entitlement to full and equal accommodations, advantages, facilities, privileges or services at the Subject Property in violation of Article 1802 of the Puerto Rico Civil Code.

50.     Plaintiff alleges on information and belief, the defendants:

        i.   negligently and carelessly designed, constructed, altered, or configured the Subject Property without regard to individuals with disabilities like plaintiff;

ii.  negligently and carelessly operated the Subject Property without regard to individuals with disabilities like plaintiff;

iii.  negligently and carelessly failed to do a professional assessment to comply with accessibility laws, although they had ample time and opportunity to avoid this result;

iv.  negligently and carelessly operated its business in violations of Regulation 7400, known as the REGLAMENTO PARA REQUERIR QUE LOS ESTACIMIENTOS COMERCIALES EN PUERTO RICO MEJOREN ACCESOS A LA COMUNIDAD CON IMPEDIMENTOS (Aug. 8, 2007), promulgated by the Puerto Rico Department of Consumer Affairs.

v.  negligently failed to seek assistance of local or state agencies to prevent a configuration of the Subject Property that would interfere with Plaintiff's rights under state and federal law.

vi.  As a direct and proximate result of one or more of these aforesaid intentional or negligent acts or omissions, the Defendants failed to provide an accessible public accommodation in compliance with state and federal law and thus, deprived, interfered, or limited Plaintiff liberty of movement at the Subject Property, causing the Plaintiff a loss of enjoyment of a normal personal life.

vii.  People with disabilities are known to experience a loss of dignity, independence, personhood and pride associated with segregation and lack of access to public accommodations. See Kevin I. Coco, Beyond the Price Tag: An Economic Analysis of Title III of the Americans with Disabilities Act, 20 Kan. J. L. & Pub. Pol'y 58, 76, 85 (Fall 2010). Access barriers and segregation in the retail context create social stigma and undermine feelings of self-worth and independence of persons with disabilities. See Stacey Menzel Baker, Jonna Holland and Carol Kaufman-Scarborough, How Consumers with Disabilities Perceive "Welcome" in

Retail Servicescapes: A Critical Incident Study, 23 J. of Serv. Marketing 160, 167-168 (2007). They also cause people with disabilities to have a negative overall reaction to the whole retail environment, and to experience fear and discomfort in that environment. See also Carol Kaufman-Scarborough, Reasonable Access for Mobility-Disabled Persons is More Than Widening the Door, 75 J. of Retailing 479, 483, 494 (1999). Studies confirm that the greater the perceptions of one's disabilities as a preventive factor in participation in the marketplace, the less satisfied one is with life.  See also Carol Kaufman-Scarborough and Stacey Menzel Baker, Do People with Disabilities Believe the ADA Has Served Their Consumer Interests?, 39 J. of Consumer Aff. 1, 24 (Summer 2005).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays this Court provide relief as follows:

1.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its facilities are fully accessible to, and independently usable by, individuals with disabilities and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendants' facilities come into compliance with the relevant requirements of the ADA to ensure that Defendants have adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law and;

2.     For damages under the Article 1802 of the Puerto Rico Civil Code, which provides for actual damages per incident of discrimination or unlawful conduct that causes damages and;

3.     For reasonable attorney's fees, litigation expenses and costs of suit pursuant to 42 U.S.C. § 12205.

DATED:  MAY 21, 2018

**LAW OFFICES OF VELEZ COLON**
3936 S. SEMORAN BLVD. #317
ORLANDO, FL 32822-4015
TEL: (787) 599-9003
*Attorney for Plaintiff*


S/JOSE CARLOS VELEZ-COLÓN, ESQ.
USDC-PR NO.: 231014
jcvelezcolon@gmail.com
